Darren Le Montree, Esq. (SBN 198715)
Darren.LeMontree@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:(213) 443-5100
Facsimile: (213) 443-5101
Attorneys for Defendants,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CHICKEN ACQUISITION CORP.        )        Case No. SACV 09-598 JVS (MLGx)

                Plaintiff,        )        **[CORRECTED] DECLARATION OF**
                         )        **DARREN LE MONTREE IN**
v.        )        **SUPPORT OF OPPOSITION TO**
                         )        **PLAINTIFF'S PETITION FOR**
NATIONAL UNION FIRE        )        **CUMIS ARBITRATION**
INSURANCE COMPANY OF        )
PITTSBURGH, PA.,        )        Date:   August 10, 2009
                         )        Time:  1:30 p.m.
                Defendants.        )        Place:  CTRM 10C
                         )

    I, DARREN LE MONTREE, certify and declare as follows:

    1.    I am member of WILSON, ELSER, MOSKOWITZ, EDELMAN &

DICKER LLP, counsel of record for National Union Fire Insurance Company of

Pittsburgh, Pa. ("National Union") and if called to testify, I could and would attest

to the following.

    2.    Attached hereto as Exhibit 1 is a true and correct copy of the

Employment Practices Liability Insurance Policy No. 284-70-69, issued by

National Union to Chicken Acquisition Corp. for the Policy Period of November

18, 2007 to November 18, 2008.

    3.    Attached hereto as Exhibit 2 is a true and correct copy of the February

14, 2008 notice of the Underlying Complaint to National Union by HUB

1  International Northeast (Plaintiff's broker).  The letter advised that "the insured has

2  retained the firm of Call Jensen and Ferrell.  Please confirm that the insured's

3  choice of counsel is acceptable under the terms of the policy."

4      I declare under the penalty of perjury under the laws of the United States

5  that the foregoing is true and correct and that this declaration was executed on July

6  30, 2009 in Los Angeles, California.

7

8                                                By:

9                                                Darren Le Montree

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

**[CORRECTED] DECLARATION OF DARREN LE MONTREE IN SUPPORT OF OPPOSITION TO PLAINTIFF'S PETITION FOR CUMIS ARBITRATION**

799375.1

# EXHIBIT 1

# AIG AIG EXECUTIVE LIABILITY[SM]

Insurance provided by the following member of American International Group, Inc.

## National Union Fire Insurance Company of Pittsburgh, Pa.®

A capital stock company

## EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

POLICY NUMBER: 284-70-69          REPLACEMENT OF POLICY NUMBER: 965-64-71

## DECLARATIONS

ITEM 1.    NAMED ENTITY:        CHICKEN ACQUISITION CORP.

           MAILING ADDRESS:     3535 HARBOR BLVD.
                                COSTA MESA, CA 92626

           STATE OF INCORPORATION OR STATE OF FORMATION OF THE NAMED ENTITY:
           Delaware

ITEM 2.    SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Entity

ITEM 3.    POLICY PERIOD:   From: November 18, 2007    To: November 18, 2008
           (12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.    LIMIT OF LIABILITY: $5,000,000_____    aggregate for all Loss combined (including Defense Costs)

ITEM 5.    RETENTION:

           Judgments, Settlements and
           Defense Costs (non-Indemnifiable Loss)          None

1087285

*Draft Copy - 03/10/2008*

67547 (4/97)   *DRAFT COPY*                    1

EXHIBIT 1

Judgements, Settlements and Defense Costs
(Company and Indemnifiable Loss)                    $150,000

for Loss arising from Claims alleging the same
Employment Practices Violation or related
Employment Practices Violation (waivable under
Clause 6 in certain circumstances)

ITEM 6.    CONTINUITY DATES:

A.    All coverages (other than Outside Entity Coverage): November 18, 2005

B.    Outside Entity Coverage: Per Outside Entity:    November 18, 2005

ITEM 7.    PREMIUM: $83,651

Premium for Certified Acts of Terrorism Coverage under Terrorism
Risk Insurance Act 2002: $2,426 included in policy premium
Any coverage provided for losses caused by an act of terrorism as
defined by TRIA (TRIA Losses) may be partially reimbursed by the
United States under a formula established by TRIA as follows: 85% of
TRIA Losses in excess of the insurer deductible mandated by TRIA, the
deductible to be based on a percentage of the insurer's direct earned
premiums for the year preceding the act of terrorism
A copy of the TRIA disclosure sent with the original quote is
attached hereto.

ITEM 8.    NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
(This policy is issued only by the insurance company indicated below.)

National Union Fire Insurance Company of Pittsburgh, Pa.

175 Water Street

New York, NY 10038

1087285

*Draft Copy - 03/10/2008*

67547 (4/97)    *DRAFT COPY*                    2

4

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 85% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *CHICKEN ACQUISITION CORP.*

Policy Number: *284-70-69*
Policy Period Effective Date From: *November 18, 2007*    To: *November 18, 2008*

*Draft Copy - 03/10/2008*

81285 (1/03)

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_
SECRETARY

PRESIDENT

AUTHORIZED REPRESENTATIVE

COUNTERSIGNATURE & DATE

COUNTERSIGNED AT

_PROGRAM BROKERAGE CORP_
_100 SUNNYSIDE BLVD_
_WOODBURY, NY 11797-2902_

_1087285_

**_Draft Copy - 03/10/2008_**

67547  (4/97)   **_DRAFT COPY_**

6

COPY OF ISSUED POLICY - NOT AN ORIGINAL

# AIG   AIG EXECUTIVE LIABILITY [SM]

Insurance provided by the following member of American International Group, Inc.

## EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the "Insurer", agrees as follows:

1. **INSURING AGREEMENTS**

   This policy shall pay the Loss of each and every Insured arising from a Claim first made against such Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Employment Practices Violation.

   **DEFENSE PROVISIONS**

   The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Employment Practices Claim" shall be made in accordance with Clause 9 of the policy.

2. **DEFINITIONS**

   (a)  "Affiliate" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, the Company; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to the Company.

   (b)  "Claim" means:

       (1)  a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

       (2)  a civil, criminal, administrative or arbitration proceeding for monetary or non-monetary relief which is commenced by:

           (i)   service of a complaint or similar pleading; or

           (ii)  return of an indictment (in the case of a criminal proceeding); or

           (iii) receipt or filing of a notice of charges.

   The term "Claim" shall include an Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured.

   However, in no event, shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

   (c)  "Company" means the Named Entity designated in Item 1 of the Declarations and any Subsidiary thereof, and any entity General Partner.

   (d)  "Continuity Date" means the date set forth in:

       (1)  Item 6A of the Declarations with respect to all coverages (other than Outside Entity Coverage);

COPY OF ISSUE    POLICY - NOT AN ORIGINAL

    (2)    Item 6B of the Declarations with respect to a Claim made against an Individual Insured(s) of the Company arising out of such Insured's service as a director, officer, trustee or governor of an Outside Entity.

(e)    "Defense Cost" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of the Company.

(f)    "Educational Services" means the providing of services by any organization which is authorized by the United States of America or any state or territory thereof or any foreign jurisdiction to confer any academic degree. "Educational Services" shall also include services provided by any organization to any organized group of pre-school age children, or services provided by any organization which confers professional licenses or credentials.

(g)    "Employee(s)" means any past, present or future employee whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary Employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual.

(h)    "Employment Practices Violation(s)" means any actual or alleged:

    (1)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

    (2)    harassment (including sexual harassment whether "quid pro quo", hostile work environment, or otherwise);

    (3)    discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation preference, pregnancy, or disability);

    (4)    Retaliation (including lockouts);

    (5)    employment-related misrepresentation(s) to an Employee or applicant for employment with the Company or an Outside Entity;

    (6)    employment-related libel, slander, humiliation, defamation or invasion of privacy;

    (7)    wrongful failure to employ or promote;

    (8)    wrongful deprivation of career opportunity, wrongful demotion or negligent Employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

    (9)    wrongful discipline;

    (10)    failure to grant tenure;

INSU Archive Copy

COPY OF ISSUE POLICY - NOT AN ORIGINAL

(11)  failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practices Violation;

(12)  violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Employee(s), or applicants for employment, with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional.

With respect to any customer(s), client(s) or any other individual or group of individuals, other than an Employee or applicant for employment with the Company or an Outside Entity, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(i)  "General Partner(s)" means: (i) the Named Entity; (ii) a Subsidiary; (iii) a director, officer, Employee, management committee member or member of the Board of Managers of the Named Entity or a Subsidiary; or (iv) any other person or entity scheduled by written endorsement hereto, acting in their capacity as a general partner of the Company.

(j)  "Individual Insured(s)" means:

(1)  any past, present or future duly elected or appointed directors, officers, management committee members, members of the Board of Managers or individual General Partners of the Company, but only in their capacities as such. Coverage will automatically apply to all new directors, officers, management committee members, members of the Board of Managers or individual General Partners of the Company after the inception date of this policy;

(2)  any past, present or future duly elected or appointed directors, officers, Employees, management committee members or members of the Board of Managers of the Company serving in the capacity as director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company;

(3)  in the event the Company operates outside the United States, then the terms director, officer, management committee member, member of the Board of Managers or individual General Partner shall also mean those titles, positions or capacities in such foreign Company which are equivalent to such positions in an organization incorporated or formed within the United States; and

(4)  any Employee(s) of the Company.

(k)  "Insured(s)" means:

(1)  Individual Insureds;

(2)  the Company.

(l)  "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgement interest and Defense Costs; however, Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) punitive or exemplary damages; (3) the multiplied portion of multiplied damages; (4) taxes; (5) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (6) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (7) any liability or costs  incurred by any  Insured to modify any building or

COPY OF ISSUED POLICY - NOT AN ORIGINAL

property in order to make said building or property more accessible or accommodating to any disabled person; or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a Claim alleging discrimination or other Employment Practices Violation; or (8) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(m)  "Medical Services" means the providing of healthcare, medical care or treatment to any individual, including but not limited to any of the following: medical, surgical, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional healthcare, including the furnishing or dispensing of medications, drugs, blood, blood products or medical, surgical, dental or psychiatric supplies or equipment or the administration or management of healthcare or any healthcare plan.

(n)  "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial in favor of all insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(o)  "Outside Entity" means:

(1)  a not-for profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) other than an organization engaged in Medical Services or Educational Services; or

(2)  any other corporation, partnership, joint venture or other organization listed by endorsement to this policy.

(p)  "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(q)  "Retaliation" means a wrongful act of an Insured relating to or alleged to be in response to any of the following activities: (1) the disclosure orthreat of disclosure by an Employee of the Company or an Outside Entity to a superior or to any governmental agency of any act by an Insured which act is alleged to be a violation of any federal, state, local or foreign law common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an Employee of the Company or an Outside Entity of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disability Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) strikes of an Employee the Company or an Outside Entity.

(r)  "Subsidiary" means:

(1)  any for-profit organization which, on or before the inception of the Policy Period, is more than 50% owned by the Named Entity, either directly, or indirectly through one or more of its Subsidiaries;

(2)  automatically any for-profit organization whose assets total less than 10% of the total consolidated assets of the Company as of the inception date of this policy and which becomes a Subsidiary during the Policy Period. The Named Entity shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period; or

INSUArchive Copy

10

COPY OF ISSUE, POLICY - NOT AN ORIGINAL

(3)   an organization which becomes a Subsidiary during the Policy Period (other than a for-profit organization described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Entity shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer, relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to such new Subsidiary.

An organization becomes a Subsidiary when the Named Entity owns more than 50% ownership interest in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries. An organization ceases to be Subsidiary when the Named Entity ceases to own more than a 50% ownership in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against Individual Insureds of any Subsidiary, or a Claim made against any Subsidiary, shall only apply to Employment Practices Violations committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

## 3.  EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representative of deceased Individual Insured, and the legal representatives of Individual Insureds in the event of incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Employment Practices Violations upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for all Claims arising solely out of his or her status as the spouse of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Employment Practices Violation of the spouse, but shall apply only to Claims arising out of any actual or alleged Employment Practices Violation of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4.  EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a)   arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b)   arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act;

› The Employment Practices Violation of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) and 4(b)

INSU Archive Copy

COPY OF ISSUE.  .  LICY - NOT AN ORIGINAL

(c)    alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Employment Practices Violations alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(d)    alleging, arising out of, based upon or attributable to any pending or prior: (1) litigation; or (2) EEOC (or similar state, local or foreign agency) proceeding or investigation of which an Insured had notice, as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or EEOC (or similar state, local or foreign agency) proceeding or investigation;

(e)    with respect to serving in a capacity as a director, officer, trustee or governor of an Outside Entity, for any Employment Practices Violation occurring prior to the Continuity Date if the Insured knew or could have reasonably foreseen that such Employment Practices Violation could lead to a Claim under this policy;

(f)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Individual Insured serving in any capacity, other than as a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor of an Outside Entity;

(g)    for any Employment Practices Violation arising out of the Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or a director, officer, trustee or governor thereof;

(h)    for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use therof;

(i)    which is brought by any Insured; provided, however, this exclusion shall not apply to a Claim brought by an Employee of the Company other than an Employee who is or was a director, member of the Board of Managers or management committee member or General Partner of the Named Entity;

(j)    for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the forgoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a Claim for Retaliation.

(k)    alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to a Claim for Retaliation.

(l)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an Insured under any express employment contract or agreement; provided, however, that this exclusion shall not apply to the extent any liability does not arise under such express contract or agreement;

COPY OF ISSUED POLICY - NOT AN ORIGINAL

(m)    alleging, arising out of, based upon or attributable to any Claim brought by a securities holder of the Company or Outside Entity or an Affiliate in their capacity as such whether derivatively on behalf of the Company or Outside Entity, or an Affiliate, or by direct or class action.

5.    **LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)**

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period or the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, any Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which, pursuant to Clause 7(b) or 7(c), is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 4 of the Declarations.

**Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.**

6.    **RETENTION CLAUSE**

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured, with regard to all Loss: (1) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss") or (2) of the Company. A single Retention amount shall apply to Loss arising from all Claims alleging the same Employment Practices Violation or related Employment Practices Violation.

The retention amount shall be reduced in the event that an Insured consents to the first "Settlement Opportunity", as defind in Clause 8, by the percentage described in Clause 8 subject to the conditions described in Clause 8.

No Retention shall apply to a Claim in the form of a civil action for monetary relief and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

(1)    a determination of No Liability of all Insureds; or

(2)    a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided however, that in the case of (2) above, such reimbursement shall occur ninety (90) days after the date of dismissal or stipulation as long as the Claim is not re-brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within that time, and further subject to an undertaking by the Company in a form acceptable to the Insurer that such reimbursement shall be paid back by the Company to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90 day period and before the expiration of the statute of limitations for such Claim.

7.    **NOTICE/CLAIM REPORTING PROVISIONS**

**Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.**

*COPY OF ISSUED POLICY - NOT AN ORIGINAL*

(a) The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

    (1) anytime during the Policy Period or during the Discovery Period (if applicable); or

    (2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Employment Practices Violation which is the same as or related to any Employment Practices Violation alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c) If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim, which is subsequently made against the Insureds and reported to the the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Employment Practices Violation which is the same as or related to any Employment Practices Violation alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against the Insured, pursuant to Clause 7 of the policy. Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the forgoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation thereof sent by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense of such Claim, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause 8. However, the Insurer shall not be obligated to defend such Claim after the Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as defined in this Clause 8.

*Archive Copy*

*COPY OF ISSUED POLICY - NOT AN ORIGINAL*

When the Insurer has not assumed the defense of a Claim pursuant to Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.

The Insurer shall have the right to effectively associate with the Company in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Insured's applicable retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that the Insureds must consent to the first such Settlement Opportunity within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time frame prescribed above, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent settlement.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time frame prescribed above, then the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Amount"), plus (2) 50% of covered Loss in excess of such Settlement Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply unless the Settlement Amount exceeds the Retention amount stated in Item 5 of the Declarations.

COPY OF ISSUE POLICY - NOT AN ORIGINAL

9.  **PRE- AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRAC-TICES CLAIMS**

This clause applies only to a Claim: (a) alleging discrimination; (b) alleging Retaliation; or (c) brought in the form of a class action, (each of the foregoing hereinafter referred to as a "Designated Employment Practices Claim").

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of any Designated Employment Practices Claim against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. Upon the written request of the Named Entity, the Insurer may consent to a law firm selected by the Named Entity, whether or not a Panel Counsel Firm, to defend the Insureds, which consent shall not be unreasonably withheld. If, however, at any time thereafter a dispute arises between the Insurer and the Insureds involving the defense of the Claim, the Insurer and the Insured shall select a replacement defense counsel from the Panel Counsel list. In the event the Insureds are defending a Designated Employment Practices Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the jurisdiction in which the Designated Employment Practices Claim is brought. In the event a Designated Employment Practices Claim is brought in a jurisdiction not included on the list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Designated Employment Practices Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located. In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non- Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Designated Employment Practices Claim is brought to function as "local counsel" on the Designated Employment Practices Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Designated Employment Practices Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

10.  **DISCOVERY CLAUSE**

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew this policy, the Named Entity shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during such applicable Discovery Period for any Employment Practices Violation occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the insurer

COPY OF ISSUED POLICY - NOT AN ORIGINAL

within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end to the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Entity shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Employment Practices Violations occurring prior to the effective time of the Transaction) for a period of no less than three years or for such longer or shorter period as the Named Entity may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonable decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

## 11.  CANCELLATION CLAUSE

This policy may be canceled by the Named Entity at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Entity. In the event of non-payment of premium by the Named Entity, the Insurer may cancel this policy by delivering to the Named Entity or by mailing to the Named Entity, by registered, certified, or other first class mail, at the Named entity's address as shown in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If this policy shall be canceled by the Named Entity, the Insurer shall retain the customary short rate proportion of the premium herein.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12.  CHANGE IN CONTROL OF NAMED ENTITY

If during the Policy Period:

a.   the Named Entity shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

b.   any person or entity or group of persons or entities acting in concert shall acquire an amount of the outstanding securities representing more than 50% of the voting power for the election of directors or General Partners of the Named Entity, or acquires the voting rights of such an amount of such securities; or

COPY OF ISSUED POLICY - NOT AN ORIGINAL

c.  a General Partner of the Named Entity (in the event the Named Entity is a partnership) withdraws, resigns or is terminated;

    (any of the above events herein referred to as the "Transaction"),

then this policy shall continue in full force and effect as to Employment Practices Violations occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Employment Practices Violation occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Entity shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Entity shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13.  SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Company's and the Insureds' rights of recovery thereof, and the Company and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of the Company or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such insured has been convicted of a criminal act, or been determined to have committed a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14.  OTHER INSURANCE AND INDEMNIFICATION

Unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by this policy shall be primary.

In the event of a Claim against an Individual Insured arising out of his or her service as a director, officer, trustee or governor of an Outside Entity or a Claim against a leased Employee as described in definition (g) of Clause 2, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided: to an Outside Entity or a leasing company; or for a Claim brought by a customer, client or other individual or group of individuals, (other than an Employee or applicant for employment with the Company or an Outside Entity); or under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

COPY OF ISSUED POLICY - NOT AN ORIGINAL

15. **NOTICE AND AUTHORITY**

It is agreed that the Named Entity shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of a Claim, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsement issued to form a part of this policy, the exercising or declining of the right to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period.

16. **ASSIGNMENT**

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

17. **DISPUTE RESOLUTION PROCESS**

All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be subject to the alternative dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association under or in accordance with its then-prevailing commercial arbitration rules, in which the arbitration panel shall be composed of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Named Entity is incorporated or formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms conditions, provisions or exclusions of the policy. In the event of arbitration, the decision of the arbitrators' shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1 of the Declarations page as the mailing address for the Named Entity. The Named Entity shall act on behalf on all Insureds in deciding to proceed with ADR under this clause.

COPY OF ISSUE. LICY - NOT AN ORIGINAL

18. **ACTION AGAINST INSURER**

Except as provided in Clause 17 of the policy, no action shall lie against the insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Company to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Company or their legal representatives. Bankruptcy or insolvency of the Company or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

19. **HEADINGS**

The description in the headings of this policy are solely for convenience, and form no part of the terms and condition of coverage .

ENDORSEMENT# 1

This endorsement, effective  12:01 AM        November 18, 2007         forms a part of
policy number    284-70-69
issued to CHICKEN ACQUISITION CORP.


by      National Union Fire Insurance Company of Pittsburgh, Pa.

### CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that any
coverage provided under this policy for punitive, exemplary or multiple damages is
subject to any limitation of such coverage provided by California law, if applicable.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*Draft Copy - 03/10/2008*  END 001
90143 (12/05)  *DRAFT COPY*           Page 1 of 1

ENDORSEMENT# *2*

This endorsement, effective *12:01 AM*    *November 18, 2007*    forms a part of
policy number   *284-70-69*
issued to *CHICKEN ACQUISITION CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CALIFORNIA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" mean the insurance company which issued this policy;  and 2), "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

. The following is added and supersedes any provision to the contrary:

### CANCELLATION

The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation.

If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

  (1)  Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

  (2)  A judgment by a court or an administrative tribunal that the named Insured has violated any law of this state of or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

  (3)  Discovery of fraud or material misrepresentation by either of the following:

   a)  The Insured or Other Insured(s) or his or her representative in obtaining the insurance; or

   b)  The named Insured or his or her representative in pursuing a claim under the policy.

  (4)  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named Insured or Other Insured(s) or a representative of same, which materially increase any of the risks insured against.

  (5)  Failure by the named Insured or Other Insured(s) or a representative of same to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan if the failure materially increases any of the risks insured against.

  (6)  A determination by the commissioner that the loss of, or changes in, an insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the Insurer.

ENDORSEMENT# 2     (continued)

(7) A determination by the commissioner that a continuation of the policy coverage could place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

(8) A change by the named Insured or Other Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Notice of cancellation shall be delivered or mailed to the producer of record and the named Insured at least thirty (30) days prior to the effective date of cancellation. Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

## CONDITIONAL RENEWAL AND NONRENEWAL

If the Insurer decides not to renew the policy, or to increase the deductible, reduce the limits, eliminate coverages or raise premium more than 25%, the Insurer shall mail or deliver to the producer of record and the named Insured notice of nonrenewal at least sixty (60) days but no more than 120 days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy.

A notice of nonrenewal shall not be required in the following situations:

(1) If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Insurer and a member of the insurance group.

(2) If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements noted above.

(3) If the Named Insured has obtained replacement coverage, or has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

(4) If the policy is for a period of no more than 60 days and the Insured is notified at the time of issuance that it will not be renewed.

(5) If the First Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

(6) If the Insurer has made a written offer to the First Named Insured, in accordance with timeframes shown above to renew the policy under changed terms or conditions or at an increased premium rate.

If the Insurer fails to give timely notice, the policy of insurance shall be continued, with no change in its terms or conditions, for a period of 60 days after the Insurer gives notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 3

This endorsement, effective 12:01 AM    November 18, 2007    forms a part of
policy number    284-70-69
issued to CHICKEN ACQUISITION CORP.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### EXCLUSION (j) AMENDED
### (FAIR LABOR STANDARDS ACT)

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS, is hereby amended by deleting Exclusion (j) in its entirety and replacing it with the following:

(j)    for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a Claim for Retaliation; provided, further, however, there is no coverage provided under this policy for any Claim related to, arising out of, based upon, or attributable to the refusal, failure or inability of any Insured(s) to pay wages or overtime pay for services rendered (hereinafter, "Earned Wages") (as opposed to tort-based back pay or front pay damages) or for improper payroll deductions taken by any Insured(s) from any Employee(s) or purported employee(s), including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any Claim seeking Earned Wages because any Employee(s) or purported employee(s) was improperly classified or mislabeled as "exempt;"

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

Draft Copy - 03/10/2008    ENG 003

91286 (6/06)    DRAFT COPY    Page 1 of 1

<u>ENDORSEMENT# 4</u>

This endorsement, effective 12:01 AM    November 18, 2007    forms a part of
policy number    284-70-69
issued to CHICKEN ACQUISITION CORP.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

## "NO LIABILITY" RETENTION WAIVER DELETED

In consideration of the premium charged, it is hereby understood and agreed that the
policy is hereby amended as follows:

(1)    The Clause entitled "DEFINITIONS" is amended by deleting the Definition of "No
Liability" in its entirety.

(2)    The Clause entitled "RETENTION CLAUSE" is deleted in its entirety and replaced by
the following:

### RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim
which is in excess of the Retention amount stated in Item 5 of the
Declarations, such Retention amount to be borne by the Company or the
Insureds and shall remain uninsured, with regard to all Loss: (1) for which the
Company has indemnified or is permitted or required to indemnify the
Individual Insured(s) ("Indemnifiable Loss"); or (2) of the Company. A single
Retention amount shall apply to Loss arising from all Claims alleging the same
Employment Practices Violation or related Employment Practices Violation.

In the event that an Insured consents to the first "Settlement Opportunity", as
defined in the DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE
ADVANCEMENT OF DEFENSE COSTS) Clause, the retention amount shall be
reduced by the percentage described therein and subject to the conditions
further described therein.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© American International Group, Inc. All rights reserved.

*Draft Copy - 03/10/2008*    FNB 004

91270 (6/06)    *DRAFT COPY*    Page 1 of 1

ENDORSEMENT# *5*

This endorsement, effective *12:01 AM*    *November 18, 2007*    forms a part of
policy number    *284-70-69*
issued to *CHICKEN ACQUISITION CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## LEADERS PREFERRED ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that, unless
modified by another endorsement to this policy, the policy is amended as follows:

1.    **Automatic new acquisitions coverage**

    Subparagraph (2) of the Definition of "Subsidiary" is amended to read as follows:

    (2)    automatically any for-profit organization which becomes a Subsidiary
        during the Policy Period but only if:

        (i)    its assets total less than 10% of the total consolidated assets of
            the Company as of the inception date of this policy; or

        (ii)    its Employees total less than the lesser of: (A) 20% of the total
            Employees of the Company as of the inception date of this policy;
            or (B) five hundred (500); or

        (iii)    such for-profit organization becomes a Subsidiary during the last
            sixty (60) days of the Policy Period.

    The Named Entity shall provide the Insurer with full particulars of the
    new Subsidiary before the end of the Policy Period.

2.    **Clause 2 Definitions of Insured and Employee amended**

    Definition of "Employee" is hereby deleted in its entirety and replaced with the
    following:

        "Employee(s)" mean any past, present or future employee, whether such
        employee is in a supervisory, co-worker or subordinate position or otherwise,
        including any part-time, seasonal and temporary Employee or volunteer in his
        or her capacity as such. An individual who is leased to the Company shall also
        be an Employee. Any other individual who is contracted to perform work for
        the Company, or who is an independent contractor for the Company shall also
        be an Employee.

    Subparagraph (4) of the Definition of "Individual Insured(s)" is hereby deleted in its
    entirety and replaced with the following:

        (4)    any Insured Employee of the Company.

    The following Definition of "Insured Employee" is hereby added to the policy:

        "Insured Employee" means any past, present or future employee, whether such
        employee is in a supervisory, co-worker or subordinate position or otherwise,
        including any part-time, seasonal and temporary Employee in his or her
        capacity as such. An individual who is leased to the Company shall also be an

*Draft Copy - 03/10/2008* ENDO 005
*DRAFT COPY*                    1                            05/02

ENDORSEMENT# 5   (continued)

Insured Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's Employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Insured Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's Employees.

3.   **Law most favorable and Punitive, Exemplary and Multiple Damages Coverage**

The Definition of "Loss" is amended as follows:

(1)   Subparagraph (8) is hereby deleted in its entirety and replaced with the following:

(8)   matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. It is further understood and agreed that a determination as to whether or not matters are "deemed uninsurable" for the purposes of this subparagraph (8) shall be governed by such applicable law which most favors the Insured.

(2)   The following additional paragraph is added at the end thereof:

Notwithstanding the foregoing, Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions), punitive, exemplary and multiple damages (including the multiple or liquidated damages' awards under the Age Discrimination in Employment Act and the Equal Pay Act). It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

4.   **Third Party Sexual Harassment and Discrimination Coverage**

The last paragraph of the Definition of "Employment Practices Violation" is deleted in its entirety and replaced with the following:

With respect to any customer(s), client(s), supplier(s), distributor(s), or any other individual or group of individuals, Employment Practices Violation shall mean any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

5.   **Limitations to Exclusions**

**Conduct Exclusions**

Exclusions (a) and (b) are hereby deleted in their entirety and replaced with the following:

(b)   arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act if a judgment adverse to the Insured(s) or an alternative dispute resolution proceeding establishes that such deliberate criminal or deliberate fraudulent act occurred;

**Insured v. Insured**

Exclusion (i) is deleted in its entirety.

*Draft Copy - 03/10/2008* ENG 005

*DRAFT COPY*                              2                              05/02



ENDORSEMENT# 5    (continued)

### Retaliation

Notwithstanding Exclusions (j) and (k), this policy shall provide coverage (subject to the policy's other terms, conditions and exclusions) for Loss arising from a Claim for Retaliation against an Employee in response to such Employee's attempt to exercise his or her rights under the law including any of the following laws or benefit rights:

(1)    Employee Retirement Income Security Act of 1974 (ERISA), specifically including Claims against an Insured brought under Section 510 of ERISA;

(2)    Fair Labor Standards Act (except the Equal Pay Act);

(3)    National Labor Relations Act (NLRA);

(4)    Worker Adjustment and Retraining Notification Act (WARN);

(5)    Consolidated Omnibus Budget Reconciliation Act (COBRA);

(6)    Occupational Safety and Health Act (OSHA);

(7)    worker's compensation;

(8)    disability benefits;

(9)    unemployment compensation;

(10)    unemployment insurance;

(11)    retirement benefits or social security benefits; or

(12)    any rules or regulations of the foregoing promulgated thereunder.

### Breach of Contract

Exclusion (l) is deleted in its entirety and replaced with the following:

(l)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express employment contract or agreement; provided, however, that this exclusion shall not apply to:

(1)    the portion of a Claim for Loss constituting Defense Costs; provided that such Claim for Loss alleges an Employment Practices Violation as defined in subparagraphs (2) or (3) of the Definition of Employment Practices Violation(s);

(2)    Loss arising out of mental anguish or emotional distress; or

(3)    Loss to the extent any liability does not arise under such written or express employment contract or agreement.

### Shareholder exclusion

Exclusion (m) is hereby deleted in its entirety and replaced with the following:

(m)    alleging, arising out of, based upon or attributable to any Claim brought by a securities holder of the Company, an Outside Entity or an Affiliate in

*Draft Copy - 03/10/2008*          ENB 005

*DRAFT COPY*                3                              05/02



ENDORSEMENT# 5    (continued)

their capacity as such in the form of a shareholder class, direct or derivative action on behalf of the Company, an Outside Entity or an Affiliate.

6.    Notice Provisions

Clause 7(a) is deleted in its entirety and replaced with the following:

(a)    The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim as soon as practicable after the Claim is reported to or first becomes known by the Risk Manager, Human Resources Director or Office of General Counsel (or if no such positions exists, then the equivalent position) and upon the earliest occurrence of the following:

(1)    The Claim is or is sought to be certified as a class action; or

(2)    The Claim is brought by more than one claimant or is sought to be consolidated with another claim brought by another claimant; or

(3)    The Claim alleges sexual harassment or discrimination by or against a duly elected or appointed corporate director or officer of the Company; or

(4)    Total Loss (including Defense Costs) of the Claim is reasonably estimated by the Risk Manager, Human Resources Director or Office of General Counsel (or if no such positions exists, than the equivalent position) to exceed 50% of the applicable Retention amount stated in Item 5. of the Declarations,

but in all events, all Claims, including but not limited to those Claims listed in 7(a) (1) through (4) above, shall be reported to the Insurer no later than:

(1)    anytime during the Policy Period or during the Discovery Period (if applicable); or

(2)    within thirty (30) days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than thirty (30) days after the date such Claim was first made against an Insured.

The Named Entity shall be entitled to report Claims, other than those Claims listed in 7(a) (1) through (4) above, by submitting a quarterly bordereau of such Claims, commencing on the inception date of this policy; provided that in all events all bordereaus must be reported to the Insurer no later than the end of the Policy Period. The bordereau shall include copies of pertinent background documentation descriptive of any such Claim to the same extent as if such Claim were being reported individually and not on the bordereau. Any such bordereau may also contain notice of circumstances that may give rise to Claims pursuant to the terms and conditions of Clause 7(c).

7.    Defense Provisions

Clause 8 of the policy is amended as follows:

<u>The first sentence of the second paragraph of Clause 8 is hereby deleted in its entirety and replaced with the following:</u>

*Draft Copy - 03/10/2008* END 005

*DRAFT COPY*                     4                          05/02



<u>ENDORSEMENT# 5</u>   (continued)

Notwithstanding the preceding paragraph, the Named Entity, on behalf of all Insureds, shall have the right to tender the defense of the Claim to the Insurer. The Named Entity shall exercise this right by giving written notice to the Insurer pursuant to Clause 7 of this policy.

The following paragraphs in this section 7 are hereby added to Clause 8:

<u>Settlements within Retention Amount (inclusive of Defense Costs): Insurer waives consent</u>

Notwithstanding any provision in this Clause 8, or elsewhere in this policy, that gives the Insurer the right of consent with respect to the settlement of any Claim, if all Insureds against whom a Claim is asserted may dispose of such Claim and any then pending Claims that are subject to the same Retention amount through a settlement pursuant to which all Loss (inclusive of Defense Costs) combined shall not exceed such Retention amount, then the Insurer's consent shall not be required for such settlement.

<u>Settlements outside Retention Amount (inclusive of Defense Costs): 10% Retention reduction</u>

In the event of a Settlement Opportunity (as defined in Clause 8) in an amount (inclusive of Defense Costs) which exceeds the Retention amount stated in Item 5. of the Declarations page, if all defendant Insureds consent to such settlement, then the Insured's applicable Retention amount shall be retroactively reduced by ten percent (10%) for such Loss. The foregoing shall only apply to the first Settlement Opportunity.

<u>Choice of Counsel/ Duty to Defend: Mutual Consent Provisions</u>

Subject to the provisions of Clause 8, the Named Entity may choose on behalf of all Insureds whether to defend a Claim themselves or tender the Claim over to the Insurer to defend.

<u>Settlement Clause</u>

The last paragraph of Clause 8 is deleted in its entirety and replaced with the following:

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 70% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 30% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5. of the Declarations.

8.   **Clause 9 Panel Counsel Amendment**

   Clause 9 is hereby amended by adding the following at the end thereof:

*Draft Copy - 03/10/2008*   ENB 005

*DRAFT COPY*

05/02

ENDORSEMENT# 5   (continued)

Notwithstanding the foregoing, other than for Claims described in paragraph (4) below, Clause 9 shall not apply to a single plaintiff action Claim alleging discrimination or sexual harassment against an Insured if the total Loss (including Defense Costs) of such Claim does not exceed, or is not reasonably estimated by the Risk Manager, Human Resources Director or Office of General Counsel (or if no such positions exists, than the equivalent position) to exceed, 50% of the applicable Retention amount stated in Item 5. of the Declarations (hereinafter "Non-Designated Claim"), subject to the following conditions.

(1)   The Insured or the Company shall select either a Panel Counsel Firm, pursuant to the terms and conditions of Clause 9, or a law firm listed below ("Non-Panel Counsel Firm") to conduct the defense of such Non-Designated Claims. A Non-Panel Counsel Firm may only be selected for a <u>Non-Designated Claim</u> brought in the jurisdiction indicated below. In the event a Non-Designated Claim is brought in a jurisdiction not indicated below, then the Insured shall select a Panel Counsel Firm, pursuant to the terms and conditions of Clause 9, to conduct the defense of such Claim.

(2)   If at any time either: (i) the total Loss (including Defense Costs) of such Non-Designated Claim exceeds, or becomes reasonably estimated by the Human Resources Department or Office of General Counsel to exceed, 50% of the applicable Retention amount stated in Item 5 of the Declarations, or (ii) the Defense Costs incurred in the defense of such Non-Designated Claim exceeds $100,000, then a Panel Counsel Firm shall be selected by the Insurer, pursuant to the terms and conditions of Clause 9, to conduct the defense of such Non-Designated Claim as lead counsel.   In such an event, however, the Insurer may, at its sole discretion, maintain the Non-Panel Counsel Firm in the jurisdiction in which the Non-Designated Claim is brought to function as "local counsel" on the Non-Designated Claim to assist the Panel Counsel Firm which will function as "lead counsel" in such Claim.

(3)   In all events, Defense Costs may not be incurred by or at the direction of any Non-Panel Counsel Firm for any Non-Designated Claim without the prior written consent of the Insurer, such consent not to be unreasonably withheld, subject to all the terms and conditions of Clause 8.

(4)   This exception to Clause 9 herein does not, in any way, apply to a Claim: (i) for which the Insurer has assumed the defense pursuant to Clause 8 of this policy; (ii) alleging <u>Retaliation</u>; (iii) brought in the form of a class action or multiple plaintiff action; or (iv) alleging <u>discrimination</u> or sexual harassment conduct by a duly elected or appointed director or officer of the Company.

<u>ADDITIONAL FIRM</u>                    <u>JURISDICTION</u>

9.   Alternative Dispute Resolution ("ADR")

The Section of the policy entitled DISPUTE RESOLUTION PROCESS is amended by addition of the following at the end thereof:

*Draft Copy - 03/10/2008* END 005

*DRAFT COPY*                    6                    05/02

ENDORSEMENT# 5   (continued)

Either choice of ADR may be commenced in any of the following locations which relate to the Named Entity:

(1)   the state of incorporation of the Named Entity; or

(2)   the state indicated in Item 1. of the Declarations page as the mailing address for the Named Entity;

or any of the following locations (regardless of whether they relate to the Named Entity):

(3)   New York, New York;

(4)   Boston, Massachusetts;

(5)   Atlanta, Georgia;

(6)   Chicago, Illinois;

(7)   Denver, Colorado.

The Named Entity shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

10.   **Worldwide Coverage**

This policy shall apply to Claims made against an Insured anywhere in the world.

11.   **Liberalization Clause**

In the event that the Insurer shall announce either: (1) a new Employment Practices Insurance policy form; or (2) an enhancement of coverage endorsement to this policy form, which is to be made available to all Insureds and for which no additional premium is required, then the Named Entity shall have the right to such new policy or such new coverage enhancement endorsement subject to all underwriting information or particulars as the Insurer may require for such new policy or enhanced coverage.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

*Draft Copy - 03/10/2008*        ENDR 005

*DRAFT COPY*                         7                              05/02

ENDORSEMENT# 6

**This endorsement, effective** *12:01 AM*    *November 18, 2007*    **forms a part of**
**policy number**   *284-70-69*
**issued to**   *CHICKEN ACQUISITION CORP.*

**by**    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRIOR ACTS EXCLUSION

### (BACKDATED)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss arising from any Claim(s) for any actual or alleged Employment Practices Violation(s) which occurred prior to 11/18/2005 or after the end of the Policy Period. This policy only provides coverage for Loss arising from Claim(s) for an actual or alleged Employment Practices Violation(s) occurring on or after 11/18/2005 and otherwise covered by this policy. Loss(es) arising out of the same or related Employment Practices Violation(s) shall be deemed to arise from the first such same or related Employment Practices Violation(s).

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN THE SAME.

*Draft Copy - 03/10/2008*                    _____
                                             AUTHORIZED REPRESENTATIVE
*DRAFT COPY*    *END 6*

ENDORSEMENT# *7*

This endorsement, effective *12:01 AM*     *November 18, 2007*     forms a part of
policy number    *284-70-69*
issued to *CHICKEN ACQUISITION CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

COVERAGE TERRITORY ENDORSEMENT

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____

AUTHORIZED REPRESENTATIVE

*Draft Copy - 03/10/2008*  ENR 007

89644 (7/05)    *DRAFT COPY*          Page 1 of 1

34

# EXHIBIT 2



**HUB International Northeast**

www.hubinternational.com

1065 Avenue of the Americas
New York, NY 10018
Office 212/338-2000
Fax 212/338-2100

## FIRST REPORT WITH SUMMONS!!!

February 14, 2008

Fax #   866-227-1750

National Union Fire Insurance Co.
c/o AIG
175 Water Street
New York, NY 10038

RE:   Insured:              El Pollo Loco, Inc. (Chicken Acquisition Corp.)
      D/L:                  31-JAN-2008
      Type of Loss:        Employment Practices Liability
      Loc./Venue:          Superior Court of the State of California
                           County of Los Angeles – Central District
      Primary Carrier:     National Union Fire Insurance Co.
      Claimant:            Robyn Wolf-James
      Location of Loss:    El Pollo Loco, Los Angeles County, CA
      Our Claim #:         204305

Dear Sirs:

Attached is an Acord loss notice along with a Summons and Complaint served on the insured via courier at their office in Costa Mesa, CA on January 31, 2008.

Please assign counsel immediately to file an answer on behalf of the following insured(s) on the policy: El Pollo Loco, Steven Adebayo and Veronica Novela, as well as any and all named insureds and or additional insureds listed on the policy or those entitled to coverage as required by written or oral contract.

Please be advised the insured has retained the firm of Call Jensen and Ferrell.  Please confirm that the insured's choice of counsel is acceptable under the terms of the policy.

Via copy of this transmittal, we are asking our client to fully cooperate with your investigation of the claim.  Should you have any questions regarding this matter please feel free to call me.

Very truly yours,
HUB International Northeast

Roberta Blumenthal AIC, ACSR
Senior Claim Examiner
Direct Dial # 212-338-2281
Fax # 212-354-0877

CC:   Mr. Michael Simmons
      El Pollo Loco, Inc.
      3535 Harbor Blvd
      Suite 100
      Costa Mesa, CA 92626-1437

EXHIBIT  2

35